IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ARGYLE D. FISHER, II, in his personal
capacity, and in his representative capacity
as the Executor for the Estate of MAXINE
SPEECE FISHER,

            Plaintiffs,

v.                               CIVIL ACTION NO.  2:13-cv-31140

LANCE MORRISON, et al.,

            Defendants.

MEMORANDUM OPINION AND ORDER

Pending are the motion to dismiss of Defendants Lance Morrison, Bernard Fox, the City of Ravenswood ("the City"), and the Ravenswood Police Department ("RPD") (collectively "Defendants") and the partial motion to dismiss of the City and RPD.  For the reasons that follow, the Defendants' motion to dismiss [ECF 3] is **DENIED** and the City's and RPD's partial motion to dismiss [ECF 7] is **GRANTED**.

I.    BACKGROUND

On October 28, 2013, Plaintiffs[1] filed this civil action in the Circuit Court of Jackson County, West Virginia. (ECF 1-1 at 15.)  On December 4, 2013, Defendants removed this action

---

[1] On August 11, 2014, the Court granted Plaintiffs' motion to substitute Argyle D. Fisher in his representative capacity into the place of Plaintiff Maxine Speece Fisher, deceased.  (ECF 20.)  Accordingly, the current Plaintiffs in this civil action are Argyle D. Fisher, in his personal capacity, and Argyle D. Fisher in his representative capacity as the Executor for the Estate of Maxine Speece Fisher.

on the basis of federal question jurisdiction because Plaintiffs have asserted claims pursuant to 42 U.S.C. § 1983. (ECF 1; ECF 1-3.)

Plaintiffs' claims stem from the October 26, 2011, arrest of Maxine Speece Fisher, now deceased, by defendant Chief Lance Morrison ("Morrison") and Captain Bernard Fox ("defendant Fox"), both of whom are members of the RPD. (ECF 1-1 at 15−17.) As relevant here, Plaintiffs allege that defendants Morrison and Fox beat and wrongfully arrested Maxine Speece Fisher and that their acts were in accordance with a custom approved by the City. (ECF 1-1 at 17−18.)

For purposes of the instant motion to dismiss, the Court takes as true the well-pleaded factual allegations in Plaintiffs' Complaint. In light of the City's and RPD's legal arguments in support of their partial motion to dismiss, however, many of Plaintiffs' factual allegations are of limited significance to the Court's consideration of the instant motion. Where necessary, the relevant facts are addressed in the discussion below.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id*. A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

### III. DISCUSSION

A. *Defendants' Motion to Dismiss*

The pending "Motion to Dismiss and Answer" (ECF 3) appears to have been filed in state court and was still pending at the time of removal. (ECF 1-1 at 2; ECF 1-1 at 5; ECF 3.) The motion to dismiss consists of a single paragraph with no citation to legal authority. It argues that Defendants "enjoy qualified immunity" and that the RPD is not a properly-named defendant. Because the Court cannot meaningfully evaluate such sparse and conclusory arguments and, moreover, because the motion is unaccompanied by a memorandum of law as required by Local Rule of Civil Procedure 7.1(a)(2)(11), the Defendants' motion [ECF 3] is **DENIED**.

B. *The City's and RPD's Partial Motion to Dismiss*

The City and RPD have also filed in this Court a partial motion to dismiss (ECF 7; ECF 8) accompanied by a memorandum of law. In this motion and memorandum, the RPD argues that it is not an entity capable of being sued and the City argues that the Complaint fails to state a

claim upon which relief can be granted with respect to Plaintiffs' intentional infliction of emotional distress and section 1983 claims. Plaintiffs have filed a response, addressing some of the arguments raised by the City and the RPD. The Court considers each argument in turn.

1.  *Proper Party*

RPD argues that it is not a legal entity capable of being sued. Beyond a conclusory assertion that the City and the RPD should not be awarded the dismissals they seek, Plaintiffs' response is silent as to this argument.

Under West Virginia law, police departments are "subject to the authority, control and discipline" of the municipalities that create them. W. Va. Code § 8–14–1. Accordingly, this Court has previously held that under West Virginia law a city police department is not a separate suable entity from the City but merely a subdivision of the City. *Tofi v. Napier*, 2:10-CV-01121, 2011 WL 3862118, at *4 (S.D. W. Va. Aug. 31, 2011) (concluding that the City of Charleston Police Department is not a separate suable entity from the City of Charleston); *see also Polk v. Town of Sophia*, 5:13-CV-14224, 2013 WL 6195727, at *4 (S.D. W. Va. Nov. 27, 2013) (holding that the Sophia Police Department was not a separate entity capable of being sued because it was an instrumentality or extension of the Town of Sophia and dismissing with prejudice all counts against police department); *Campbell v. Beckley Police Dep't*, CIV.A.5:06-CV-00659, 2007 WL 2318056, *2 (S.D. W. Va. Aug. 8, 2007) (adopting recommendations of magistrate judge to grant Beckley Police Department's motion to dismiss as to all claims because it was not an entity capable of being sued).

For these reasons, the Court **GRANTS** the partial motion to dismiss [ECF 3] with respect to the RPD and **DISMISSES** all counts contained in Plaintiffs' Complaint against the RPD.

2.  *Intentional Infliction of Emotional Distress Claims Against the City*

The City argues that Plaintiffs claim of intentional infliction of emotional distress against the City should be dismissed because it is well-settled law in West Virginia that political subdivisions such as the City are immune from liability for the intentional acts of employees pursuant to W. Va. Code. 29-12A-4(c)(2).  Again, beyond a conclusory assertion that the City and the RPD should not be awarded the dismissals they seek, Plaintiff has not responded to this argument.

As this Court has previously explained:

> Generally, political subdivisions are immune from being sued in a civil action for "injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision." W. Va. Code § 29–12A–4(b)(1). Subsection (c) recognizes some instances where political subdivisions are liable: "injury, death or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29–12A–4(c)(2). This subsection makes political subdivisions liable for negligent acts, not intentional ones. *Mallamo v. Town of Rivesville,* 197 W.Va. 616, 477 S.E.2d 525 at 533 (W. Va. 1996). Thus, political subdivisions are not liable for intentional torts committed by their employees.

*Tofi v. Napier*, 2:10-CV-01121, 2011 WL 3862118, at *3 (S.D. W. Va. Aug. 31, 2011).

Plaintiff asserts a claim of intentional infliction of emotional distress, which tort is an intentional tort.  Because the City is immune from intentional tort claims, Plaintiff has failed to state a claim against the City on this count.  Therefore, the partial motion to dismiss [ECF 3] is **GRANTED** with respect to Plaintiffs' intentional infliction of emotional distress count against the City and such count is **DISMISSED**.  *See Buhro v. Dent*, 5:13-CV-81, 2014 WL 460937, at *6 (N.D. W. Va. Feb. 5, 2014) (dismissing intentional tort claims, including intentional infliction of emotional distress, against the City of Wheeling because the city was immune from liability for its employees' intentional torts); *Poe v. Town of Gilbert, W. Va.*, 2:11-CV-00645, 2012 WL 3853200, at *8 (S.D. W. Va. Sept. 5, 2012) (granting motion to dismiss claims that alleged

intentional torts, including the intentional infliction of emotional distress, against Town of Gilbert); *Mallamo v. Town of Rivesville,* 477 S.E.2d 525, 533–34 (1996) (holding that the Town of Rivesville could not be held vicariously liable for an alleged conspiracy by its police officers).

  *3.*    *Section 1983 Claims Against the City*

  Finally, the City argues that Plaintiffs' section 1983 claims fail set forth specific facts and grounds for the liability of a political subdivision or government employer as required pursuant to *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). Plaintiffs respond that the Complaint sufficiently alleges an informal or unofficial "custom" of "the proclivity and tendency for violence, excessive force, abusiveness, and intemperance." (ECF 14 at 4−5.)

  "A municipality or other local government may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1359 (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). Under § 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665–683). They are not vicariously liable under § 1983 for their employees' actions. *See id*. at 691; *Canton*, 489 U.S. at 392; *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases).

  To prove a § 1983 claim against a municipality, a plaintiff must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691, 694. "To state a cause of action against a municipality, a section 1983 Plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 781 (M.D.N.C.

2011) (quoting *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008)); *see Jordan ex. rel Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A "policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted) (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Such customs may be attributed to a local government if the duration and frequency of the practices rises to a level such that the governing body may be deemed to have constructive knowledge that the practices have become customary among its employees. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). "Constructive knowledge may be evidenced by the fact that the practices have become so widespread and flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." *Id*.

Policy or custom may be shown in a number of ways, such as in "persistent practices of municipal officials having the de facto force of law." *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (internal quotation marks omitted). "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91.

Policy or custom may also "be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." *Milligan*, 743

F.2d at 229–30. Under narrow circumstances, policy may also be inferred "from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Id*. at 230. However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id*.

Here, Plaintiffs argue that they have alleged an informal or unofficial "custom" for "the proclivity and tendency for violence, excessive force, abusiveness, and intemperance." (ECF 14 at 4−5.) In support of their contention, Plaintiffs point to the following paragraphs from the Complaint:

> 7. At all times relevant hereto, [the City] knew, or should have known, of the proclivity and tendency for violence, excessive force, abusiveness, and intemperance of Chief Lance Morrison; Captain Bernard Fox; and the Ravenswood Police Department, in general, nevertheless, permitted and authorized them to continue in their capacities as police officers and law enforcement officers and retained them as such, thereby ratifying their conduct punctuated by routine unlawful use of their authority and abusiveness. [The City] had both actual and constructive notice of the individual tendencies toward intemperance, use of excessive force, and violence of Chief Lance Morrison; Captain Bernard Fox; and the Ravenswood Police Department, in general.
>
> 8. On or about October 26, 2011, Chief Lance Morrison and Captain Bernard Fox under color and by virtue of their office and official position, maliciously, unlawfully and without reasonable or probable cause, and without permission, consent, or a warrant and in the absence of exigent circumstances arrested and beat [Maxine Speece Fisher], within the city limits of Ravenswood, West Virginia.
>
> 9. Chief Lance Morrison and Captain Bernard Fox without warrant or process, acted in concert to commit an unlawful act or to commit a lawful act through unlawful means by engaging in an overt act, to-wit: Bernard Fox accosted Maxine Speece Fisher on her front porch; shouted and spit in her face; insulted the plaintiff

>as to her familial relationship with the former police chief; and invaded the plaintiff's personal space.

Plaintiffs' allegations do not satisfy the pleading standards as interpreted by *Iqbal* and *Twombly* because they are alternately recitals of the applicable legal standard and conclusory assertions. Even viewing these assertions in the light most favorable to Plaintiff, there are no facts alleged that, taken as true, would plausibly demonstrate that the alleged custom of the proclivity of violence existed, let alone that the City knew or should have known of it or that such policy caused the deprivation of Plaintiffs' rights.

In *Poe v. Town of Gilbert*, this Court found that a plaintiff had plausibly stated a municipal liability claim by alleging facts that certain officers alleged to have violated the plaintiff's constitutional rights were acting in accordance with a policy or custom of the Town of Gilbert. 2012 WL 3853200 at *6−7. This was so because the plaintiff alleged facts that the Town knew that the officers in question had a longstanding history of physical violence toward citizens, had received complaints regarding these officers' conduct, and did not require training or re-training of police officers known to engage in police misconduct. *Id.* at *7. The Court concluded that these allegations (taken as true) plausibly demonstrated that the Town was on either actual or constructive notice that a particular omission in its training program caused its employees to violate citizens' constitutional rights. *Id.* Here, in contrast, Plaintiffs simply make the conclusory assertion that the City had actual or constructive knowledge of a custom of "violence, excessive force, abusiveness, and intemperance."[2]

---

[2] The Court further observes that elsewhere in the Complaint, in portions not relied upon by Plaintiffs in support of their response, Plaintiffs have also asserted that defendants Morrison and Fox acted in accordance with this custom during the disputed period of Maxine Speece Fisher's arrests. (ECF 1-1 at 15 ¶¶ 13, 21, 25.) Again, however, in those sections Plaintiffs have also not pled any facts in support of any such a custom. Rather, Plaintiffs simply make the conclusory assertion that such a custom existed and that Morrison and Fox were "implementing, complying with, executing, following, and fulfilling" that custom when they allegedly beat and arrested Maxine Speece Fisher.

Accordingly, the Court **GRANTS** the partial motion to dismiss [ECF 7] with respect to Plaintiffs' section 1983 claim against the City and that claim is **DISMISSED**.

4. *Supplemental Jurisdiction*

Although the Court finds that Plaintiffs' only federal claim against the City must be dismissed, the Court will continue to exercise supplemental jurisdiction over Plaintiffs' remaining state claims against the City.

District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). The Court may decline to exercise supplemental jurisdiction over a claim for reasons listed in 28 U.S.C. § 1367(c). *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,* 554 F.3d 595, 601–02 (5th Cir. 2009); *see also Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010) (applying section 1367(c) factors in a review of a district court's decision to exercise jurisdiction in a removed action). Section 1367(c) provides that the district court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

In addition to these statutory considerations, other "factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110; *see also Arrington*, 369 F. App'x at 423−24.

Here, although Plaintiffs' section 1983 claims must be dismissed against the City, Plaintiffs' section 1983 claims against defendants Morrison and Fox remain pending. Moreover, Plaintiffs' remaining claims against the City generally flow from the same underlying circumstances as these claims and the remaining claims do not raise particularly novel or complex issues of West Virginia law. Furthermore, the parties are currently engaging in discovery, and discovery appears to be proceeding appropriately toward the discovery cutoff date of September 15, 2014.

Although sensitive to concerns of comity, under these circumstances the Court finds that none of the statutory factors provided in Section 1367(c) strongly counsel in favor of declining to continue to exercise jurisdiction over Plaintiffs' state law claims against the City. The interests of judicial economy, convenience, and fairness to the parties are best served by the Court exercising jurisdiction. *Cf. Harris v. Fort Bend Indep. Sch. Dist.*, CIV.A. H-07-635, 2007 WL 7238944, at *3 (S.D. Tex. Aug. 14, 2007) (exercising supplemental jurisdiction over state-law claims against defendants where a federal claim was still pending against another defendant after the granting of a partial motion to dismiss).

### IV. CONCLUSION

For these reasons, the Court **DENIES** Defendants motion to dismiss [ECF 3] and **GRANTS** the City of Ravenswood's and the Ravenswood Police Department's partial motion to dismiss [ECF 7]. Therefore, the Court **DISMISSES** Plaintiffs' Complaint against Defendant Ravenswood Police Department and **DISMISSES** Plaintiffs' intentional infliction of emotional distress claim and Plaintiffs' section 1983 claim against the City of Ravenswood.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:      Sept. 8, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE